**No. 24-13310**

---

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

---

TRAVELERS PROPERTY CASUALTY INSURANCE COMPANY,

*Plaintiff-Appellant*,

v.

KAMESHA DAVIS,

*Defendant-Appellee*,

Appeal from the United States District Court
for the Middle District of Georgia

No. 1:23-cv-00029-LAG

---

**BRIEF OF APPELLANT**

---

David M. Atkinson
Sarah R. Daley
MARSH ATKINSON & BRANTLEY, LLC
271 17th Street NW.
Suite 1600
Atlanta, GA 30363
david.atkinson@mablawfirm.com
sarah.daley@mablawfirm.com

*Attorney for Plaintiff-Appellant Travelers Property Casualty Insurance Company*

i

## CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure, the undersigned counsel for Appellant hereby certify that the following is a complete list of all trial judges, attorneys, persons, associations of persons, firms, partnerships, or corporations that have an interest in the outcome of this particular appeal, including subsidiaries, conglomerates, affiliates, parent corporations, any publicly held corporation that owns 10% or more of the party's stock, and other identifiable legal entities related to a party:

1.    **Trial Judge**

The Honorable Leslie A. Gardner, United States District Court Judge for the Middle District of Georgia.

2.    **Attorneys**

David M. Atkinson – Attorney for Plaintiff-Appellant;

Sarah R. Daley – Attorney for Plaintiff-Appellant;

Noah A. Caldwell – Former Attorney for Plaintiff-Appellant;

Douglas Herman –Attorney for Defendant-Appellee;

David A. Johnson – Attorney for Defendant-Appellee;

Troy A. Gay – Former Attorney for Defendant-Appellee;

Brandi Allday[*] – Former Attorney for Defendant-Appellee;

Marsh, Atkinson, & Brantley, LLP – Law Firm representing Plaintiff-Appellant;

Swift, Currie, McGhee & Hiers, LLP – Former Law Firm representing Plaintiff-Appellant; and

Mike Hostilo Law Firm –Law Firm representing Defendant-Appellee.

**3.    Parties**

Travelers Property Casualty Insurance Company – Plaintiff-Appellant; and

Kamesha Davis – Defendant-Appellee.

**4.    Other persons, associates of persons, firms, partnerships, and corporations**

Lydia Torres – Defendant in Underlying Tort Action;

Brianna L. Torres – Defendant in Underlying Tort Action;

The Standard Fire Insurance Company – Corporate Parent of Plaintiff-Appellant;

Travelers Insurance Group Holdings Inc. – Corporate Parent of The Standard Fire Insurance Company;

Travelers Property Casualty Corp. – Corporate Parent of Travelers Insurance Group Holdings Inc.; and

---

[*] Mr. Gay and Ms. Allday were listed as attorneys in the underlying tort action, but not in the coverage action which is currently being appealed.

iii

The Travelers Companies, Inc. – Corporate Parent of Travelers Property

Casualty Corp.

## STATEMENT REGARDING ORAL ARGUMENT

Plaintiff-Appellant Travelers Property Casualty Insurance Company ("Travelers") requests that this Court hear oral argument. This case presents an insurance coverage issue under Georgia law that involves mixed questions of law and fact. The District Court misconstrued deposition testimony regarding the intent of the defendant/appellee Kamesha Davis ("Davis"), which is critical to determining whether Davis qualifies as an "insured" under the relevant contract of insurance. In addition, the District Court failed to properly apply the test to determine the "household" of the named insured and instead conflated the terms "residence" and "household." Travelers respectfully submits that oral argument will provide an opportunity to explore the proper application of Georgia law to the facts of this case and will allow the parties to address any specific questions the Court may have.

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ................................................................................ vii

JURISDICTIONAL STATEMENT ..................................................................... ix

STATEMENT OF THE ISSUES.................................................................... - 1 -

STATEMENT OF THE CASE........................................................................ - 1 -

    I.   Facts of the Case .............................................................................. - 1 -

    II.  Procedural History .......................................................................... - 4 -

SUMMARY OF THE ARGUMENT ............................................................... - 5 -

STANDARD OF REVIEW ............................................................................. - 8 -

ARGUMENT ................................................................................................... - 9 -

    I.   The district court erred in holding Davis' transient stay at the 257 Highway 308 house during the holidays after her brother's death was sufficient to establish her intention to merge her household with her mother's household. ................. - 9 -

    II.  The district court erred in holding Theresa Davis maintained a household at the 257 Highway 308 house when she testified she lived elsewhere and spent at most two weekends a month there.................................................................. - 12 -

    III.   The district court erred in weighing the evidence in granting Davis' motion for summary judgment. ...................................................................... - 16 -

CONCLUSION .............................................................................................. - 18 -

## TABLE OF AUTHORITIES

**Statutes**                                                                    **Page(s)**

28 U.S.C. § 1291 ……………………………………………………………viii

28 U.S.C. § 1332 ……………………………………………………………viii

**Cases**

AcryliCon USA, LLC v. Silikal GmbH, 985 F.3d 1350 (11th Cir. 2021) …………8

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 106 S. Ct. 2505 (1986)…...………17

Buending v. Town of Redington Beach, 10 F.4th 1125 (11th Cir. 2021) ………...…17

Daniel v. Allstate Ins. Co., 290 Ga. App. 898, 660 S.E.2d 765 (2008)..………........9

Grange Mut. Cas. Co. v. Brinkley, 182 Ga. App. 273,
355 S.E.2d 767 (1987)…………………………………………………………….15

Henderson v. Transcontinental Mut. Ins. Co., 227 F.2d 106 (5th Cir. 1955)……..15

Jones v. UPS Ground Freight, 683 F.3d 1283 (11th Cir. 2012) …………………..17

McCullough v. Reyes, 287 Ga. App. 483, 651 S.E.2d 810 (2007) …….….…passim

Rainey v. State Farm Mut. Auto. Ins. Co., 217 Ga. App. 618,
458 S.E.2d 411 (1995)…………………………………………….............10, 11, 14

Robertson v. Lumbermen's Mut. Cas. Co., 160 Ga. App. 52,
286 S.E.2d 385 (1981)…………………………………………………………….15

Sanders v. Ga. Farm Bureau Mut. Ins. Co., 182 Ga. App. 279,
355 S.E.2d 705 (1987)  …………………………………………………….10, 11

Sierra Club, Inc. v. Leavitt, 488 F.3d 904 (11th Cir. 2007) ………………………..8

Southeastern Fidelity Ins. Co. v. McDonald, 125 Ga. App. 394,
188 S.E.2d 162 (1972)……………………………………………………….15

Travelers Prop. Cas. Ins. Co. v. Whitaker,
337 F. Supp. 3d 1244 (M.D. Ga. 2018)………………………………………….9

Wadley Crushed Stone Co., LLC v. Positive Step, Inc.,
34 F.4th 1251 (11th Cir. 2022)………………………………………………..8

## JURISDICTIONAL STATEMENT

Jurisdiction of this action was proper in the United States District Court for the Northern District of Georgia pursuant to 28 U.S.C. § 1332 because complete diversity existed between the parties and the amount in controversy exceeded $75,000.  The district court entered final judgment against Travelers on September 17, 2024.  Travelers timely noticed its appeal.  Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUES

1.    Whether the district court erred in holding Kamesha Davis' transient stay at a house owned by her mother during the holidays after her brother's death was sufficient to establish her intention to merge her household with her mother's household when Davis always intended to move to Florida until some point in time after the motor vehicle accident giving rise to this case.

2.    Whether the district court erred in holding Theresa Davis maintained a household at the 257 Highway 308 house when Theresa Davis testified she lived elsewhere and spent at most two weekends a month there.

3.    Whether the district court erred in weighing the evidence to find Kamesha Davis was a resident of her mother's household and granting her motion for summary judgment.

## STATEMENT OF THE CASE

### I.    Facts of the Case

Travelers issued Policy No. 6008827 203 1 (the "Travelers Policy") to Theresa Davis ("Theresa"), Defendant-Appellee Kamesha Davis' ("Davis") mother, on July 20, 2020.  ([Doc. 15-3] at 3.)  The Travelers Policy has a policy period from June 30, 2020, through June 30, 2021, and lists Theresa's address as 503 East Jefferson Street, Americus, Georgia (the "East Jefferson Street address").  (Id. at 1-

3.) Theresa is the only named insured or insured driver listed, and the only vehicles listed are a 2008 Infinity G37 and a Honda Odyssey LX. (Id. at 3.)

The Travelers Policy includes Uninsured Motorists Coverage ("UM Coverage"), which states Travelers "will pay compensatory damages . . . which an 'insured' is legally entitled to recover . . . ." (Id. at 21.) Under the Policy, an "insured" is defined as either the named insured—Theresa—or "any 'resident relative.'" (Id.) A "resident relative" is defined by the Policy to mean "a person related to [the named insured] by blood, marriage or adoption who is a resident of [the named insured's] household." (Id. at 10.)

Theresa testified that she had lived at the East Jefferson Street address "[a]ll [her] life." ([Doc. 15-4] at 16-17.) At this address, she also operated a business for 21 years called "A Touch of Home for the Elderly." (Id. at 9.) This business ceased operations in 2021. (Id. at 15.) While the business was operational, Theresa continued to live at the East Jefferson Street address and slept there every night:

> Q.   So during -- you know, since -- after you started the assisted living business there, did you ever live at 503 East Jefferson Street?
>
> A:   All my life.  That's where I grew up in. [sic]
>
> Q.   Okay.  And what -- and while the business was running, were you sleeping there every night?
>
> A.   Yes.  Someone had to be there 24 hours.

(Id. at 16-17.)   Theresa would also occasionally sleep at a house she owned located at 257 Georgia Highway 308, Plains, Georgia (the "Highway 308 address").  (Id. at 17.)  However, she would only sleep at this house every other weekend, when she had employees to cover for her at the East Jefferson Street address.  (Id. at 18.)

On or about December 1, 2020, Davis began staying at the Highway 308 address after the death of her brother.  ([Doc. 15-5] at 12-13.)  Prior to this time, Davis was living in Americus, Georgia.  (Id. at 13-14.)  Davis left the house she was renting in Americus on November 16, 2020.  (Id. at 18, 41.)  She originally planned to immediately move to Jacksonville, Florida, where she had a job lined up and had already been approved for Section 8 housing.  (Id. at 40-42.)  However, because she contracted Covid, Davis was forced to quarantine in Georgia and, because she had already moved out of her rental house and could not rent anything new because she was moving to Florida, she spent the first days of her quarantine at her boyfriend's apartment.  (Id.)

Her brother passed away while Davis was still quarantining, and Davis decided to stay at the Highway 308 address to temporarily help her mother. (Id. 42-43.)  When she first moved into the Highway 308 address, Davis still had Covid and was quarantining on Covid leave.  (Id. at 44-45.)  She also still intended to move to Jacksonville.  (Id. at 13, 42-43.)  It was not until "a year or two" after she began staying at the Highway 308 address (and after the accident at issue)—in late 2021 or

2022—that both Davis and her mother began to consider it a permanent arrangement.  ([Doc. 15-4] at 32-33.)  In fact, Theresa affirmatively stated that Davis's stay at the Highway 308 address "was supposed to be temporary."  (Id. at 32-33.)  Davis herself testified specifically that her intention was always to move to Jacksonville and that this intention only changed after the accident, "probably around January," because, while she still wanted to go to Jacksonville, she was no longer able to do so due to her injuries.  ([Doc. 15-5] at 46.)

The accident giving rise to this litigation occurred on December 25, 2020, while Davis was driving a 2011 Hyundai Sonata along Adderton Street in Americus.  ([Doc. 15-6] at 1-2.)  At the same time, Lydia Torres attempted to make a left-hand turn across defendant's lane in a Nissan Maxima owned by Brianna Torres.  (Id.)  According to the wreck report, Ms. Torres failed to yield to Davis and caused their cars to collide.[2]  (Id.)

## II.    Procedural History

On December 22, 2022, Davis filed a complaint against Lydia and Brianna Torres in the State Court of Sumter County and served Travelers as a potential uninsured motorist carrier (the "Underlying Action").  (See generally [Doc. 15-7].)  Travelers filed the instant declaratory judgment action on February 14, 2023, in

---

[2] Travelers takes no position regarding fault in the Underlying Action, but merely recites the events as described in the wreck report for the Court's benefit.

order to determine its coverage obligations under the UM Coverage of the Policy. (See [Doc. 1].) The Underlying Action has been stayed pending the resolution of this action on June 13, 2023. (See [Doc. 15-7].)

Following discovery, both Travelers and Davis filed motions for summary judgment. ([Doc. 19] at 1.) The district court held that the evidence established "that during the relevant time period [Davis] intended to reside at the Highway 308 Property with her mother, that the 308 Highway Property was one of [Theresa] Davis's residences, and that [Davis] and [Theresa] Davis were financially interdependent." ([Doc. 19] at 14.) Contrary to Davis' deposition testimony, the Court specifically found that Davis only had the intent to move to Jacksonville before her brother's death and that her intentions changed after her brother's death. (Id. at 10.) Based on these findings, the district court denied Travelers' motion for summary judgment and granted Davis' motion, finding that Davis is entitled to UM coverage as a "resident relative" of Theresa Davis. (Id. at 14.)

## SUMMARY OF THE ARGUMENT

The district court made three errors below. First, it incorrectly held Davis did not intend to move to Jacksonville after her brother's death despite Davis' clear testimony that, as of the time of the accident, she still intended to make this move and did not change her mind until after her accident. Second, the district court erroneously held that Theresa maintained her household at the Highway 308 address

despite her testimony that she lived at the East Jefferson Street address all of her life and would stay at the Highway 308 address on occasion. Finally, even if the Court were to find that the district court correctly denied Travelers' motion for summary judgment, the record reflects that Travelers produced sufficient evidence that Davis was not a resident of Theresa's household, and the district court therefore erred in weighing the evidence to grant Davis' motion for summary judgment.

The lower court first erred in holding Davis had the intent to merge her household with Theresa's. Prior to and including the date of the accident, Davis at all times intended to move to Jacksonville, Florida. When she originally moved out of her rental house in Americus, Georgia, Davis had the intention of immediately moving to Florida, but, due to being diagnosed with Covid, she was forced to quarantine in Georgia before moving. While she was quarantining, Davis' brother passed away. Though she still had Covid, she began staying at the Highway 308 address during the holiday season to provide her mother with emotional support. However, Davis testified that she still intended to move to Jacksonville, and her mother testified that her stay at the Highway 308 address was meant to be temporary. It was not until after Davis' accident on Christmas Day of 2020 that she decided not to move to Jacksonville because she was no longer able to due to her injuries. Davis' stay at the Highway 308 address was therefore meant to be no more than a transient

- 6 -

visitation, and she had no intention of merging her household with Theresa's household prior to her accident.

The district court also committed error in finding that Theresa maintained a household at the Highway 308 address in Plains, Georgia, and that Davis was a member of Theresa's household because she was temporarily staying there. While Theresa may have had two <u>residences</u>, she did not have two <u>households</u>—and the district court erred by conflating the two terms. Theresa maintained her <u>household</u> at the 503 East Jefferson Street house, where she had lived her entire life. At most, Theresa stayed maybe two weekends a month at the Highway 308 address, which was another residence that she owned and where she had allowed her adult daughter, Davis, to stay temporarily. The issue is not whether Thersa could have two "residences"—which she may have had—but whether that second residence was part of her "household"—which it was not. Therefore, even if Davis did establish a residence at the Highway 308 address prior to her accident because she was temporarily staying there, Davis would not be considered a member of Theresa's household just because she was staying at a house owned by Theresa. Theresa and Davis maintained separate households as of the date of the accident, and it was not until much later that Davis became a member of Theresa's household.

Finally, even if the Court were to find that the evidence did not conclusively establish Davis was <u>not</u> a resident of her mother's household—which Travelers

- 7 -

contends it does—the district court erred in weighing the evidence to find Davis <u>was</u> a resident of her Theresa's household. It cannot be disputed that Travelers at minimum produced sufficient evidence demonstrating that Davis and her mother had not merged households prior to her accident in December 2020. In order to grant Davis' motion for summary judgment, then, the district court impermissibly weighed the evidence to conclusively find that the evidence established Davis was a resident of Theresa's household. Because the district court is prohibited from weighing the evidence on summary judgment, this was clear error.

## **STANDARD OF REVIEW**

Summary judgment is granted, "when viewing the evidence in the light most favorable to the non-moving party, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." <u>Wadley Crushed Stone Co., LLC v. Positive Step, Inc.</u>, 34 F.4th 1251, 1256 (11th Cir. 2022) (citing <u>Sierra Club, Inc. v. Leavitt</u>, 488 F.3d 904, 911 (11th Cir. 2007)). This Court "review[s] a District Court's factual findings for clear error and its legal conclusions *de novo*." <u>Id.</u> (citing <u>AcryliCon USA, LLC v. Silikal GmbH</u>, 985 F.3d 1350, 1363 (11th Cir. 2021)).

## ARGUMENT

**I.    The district court erred in holding Davis' transient stay at the Highway 308 address during the holidays after her brother's death was sufficient to establish her intent to merge her household with her mother's household.**

The undisputed facts in the record demonstrate that Davis had no intention of establishing a residency at the Highway 308 address at the time of her accident but was instead intending on staying at this house temporarily during the holidays after her brother's death before moving to Jacksonville, Florida.

"In deciding whether a relative is a resident of the named insured's household, [courts] generally consider both the language of the insurance policy and the aggregate details of the family's living arrangements." Travelers Prop. Cas. Ins. Co. v. Whitaker, 337 F. Supp. 3d 1244, 1248 (M.D. Ga. 2018) (quoting Daniel v. Allstate Ins. Co., 290 Ga. App. 898, 902, 660 S.E.2d 765 (2008)).  While the Policy does not define what "resident of [the named insured's] household" means, "the Georgia Court of Appeals has held that the ordinary and accepted meaning of the phrase 'one residing in the same household' in an insurance policy pertains to one who physically maintains permanent or frequently utilized living accommodations." Id. (quoting Daniel, 290 Ga. App. at 902) (internal quotations omitted).

However, "[l]iving under a common roof is not a controlling element in determining whether a relative is a resident of the insured's household; rather . . . the aggregate details of the family's living arrangements must be considered." Id. at

1249 (citing McCullough v. Reyes, 287 Ga. App. 483, 489, 651 S.E.2d 810 (2007)). To be a "resident relative" requires "[m]ore than mere physical presence and transient visitation." Id. at 1248 (quoting Rainey v. State Farm Mut. Auto. Ins. Co., 217 Ga. App. 618, 620, 458 S.E.2d 411 (1995)). "Of critical importance to such an analysis is whether the family members have established and maintained separate households under different managements." Id. at 1249 (quoting McCullough, 287 Ga. App. at 489). An important factor in determining whether family members have merged their households is their intent to do so. See id. (citing Sanders v. Ga. Farm Bureau Mut. Ins. Co., 182 Ga. App. 279, 280, 355 S.E.2d 705 (1987), and Rainey, 217 Ga. App. at 619) (emphasizing "intent" is an important factor in determining whether an individual is a resident of an insured's household).

Contrary to the district court's assertion that Davis only had an intention to move to Jacksonville before her brother's death, ([Doc. 19] at 10), Davis and her mother's testimony reveal that Davis still intended to move to Jacksonville after her brother's death and that this intention did not change until after her accident. ([Doc. 15-4] at 31; [Doc. 15-5] at 43.) In fact, Davis specifically testified that she always intended to move to Jacksonville and never intended to stay at the Highway 308 address until she changed her mind "[a]fter the accident . . . probably around January." ([Doc. 15-5] at 46.) Davis stated that her intention only changed after she was injured in the accident as she "wasn't able" to move anymore. (Id. at 46.)

- 10 -

Theresa—the owner of the Highway 308 house—also testified that Davis' move to the Highway 308 address "was supposed to be temporary." ([Doc. 15-4] at 32-33.)

The record clearly shows, then, that Davis' stay at the Highway 308 address was meant to be a "transient visitation" rather than a merger of households. See Rainey, 217 Ga. App. at 620 (citing Sanders, 182 Ga. App. at 280). From the moment she moved out of her rental house in Americus until her accident, Davis at all times intended to move to Jacksonville but experienced delays. ([Doc. 15-5] at 13, 18, 40-45.) Originally, Davis delayed her move to Jacksonville because she contracted Covid and was forced to quarantine in Georgia before moving. (Id. at 40-42.) She was delayed again by her brother's death, after which she began staying at the Highway 308 address—while she still had Covid—in order to provide her mother emotional support, further delaying her move. (Id. at 42, 44-45.) Davis continued her stay at the Highway 308 address for a few weeks through her accident on Christmas Day, maintaining her intention to move to Jacksonville throughout her stay. (See [Doc. 15-4] at 32-33; [Doc. 15-5] at 46.)

Despite the clear evidence that Davis at all times prior to her accident intended for her stay at the Highway 308 address to be temporary before her move to Florida, the district court held that "[w]hile the record here shows that before her brother's death, Defendant had secured a job and been approved for subsidized housing in Jacksonville, when her brother passed away, [Davis] undisputedly formed the intent

- 11 -

to move in with her mother to provide emotional support." ([Doc. 19] at 10 (emphasis in original).) The district court held that the record conclusively established "that during the relevant time period [Davis] intended to reside at the Highway 308 Property with her mother." (Id. at 14.) This holding was in clear error.

Not only does the record not indicate Davis intended to merge her household with her mother's on December 1 when she first began staying at the Highway 308 address, the record in fact establishes the opposite, as both Davis' and her mother's testimony conclusively demonstrates. Accordingly, Travelers respectfully requests that this Court reverse the district court's holding and hold that the district court should have granted Travelers' motion and denied Davis' motion.

## II. The district court erred in holding Theresa Davis maintained a household at the Highway 308 address.

Theresa unambiguously testified that she lived at the East Jefferson Street address "[a]ll her life," even "after [she] started the assisted living business there." ([Doc. 15-4] at 16-17.) Despite this testimony, the district court held the evidence established that "the 308 Highway Property was one of T. Davis's residences" and relied on this holding to find that Davis was a resident of Theresa's household. ([Doc. 19] at 14.) In making this ruling, the district court erroneously conflated the term "household" with "residence." (Id. at 9.)

Georgia law defines "'household' as 'a domestic establishment including the members of a family and others *who live under the same roof* and also as 'a family

- 12 -

living *together*.'"  McCullough, 287 Ga. App. at 488 (emphasis in original).  Though a person's residence is not defined by a "common roof," their household is.  Id. Theresa's testimony establishes that she maintained her household at the East Jefferson Street address in Americus and not at the Highway 308 address in Plains. ([Doc. 15-4] at 8, 16-18.)  Although Davis may have lived temporarily at one of Theresa's residences, Theresa maintained her household at the East Jefferson Street address.  Davis never resided at the East Jefferson Street address.  Put differently, even if Davis could show that she established a household at the Highway 308 address (which she cannot) and that Theresa could be considered an occasional resident of the Highway 308 address, it would not follow that Davis was a resident of Theresa's household, which was located at the East Jefferson Street address.

Theresa testified that she was "from Americus, Georgia" and has "lived there [her] whole life."  ([Doc. 15-4] at 8.)  She further testified that she had lived at the East Jefferson Street address even after she started her assisted living business there, and she stated she had in fact lived in that house "[a]ll [her] life."  (Id. at 16-17.)  At most, Theresa slept at the Highway 308 address in Plains, Georgia, "every other weekend."  (Id. at 18.)

The record demonstrates, then, that Theresa did not live under "the same roof" as Davis, because Theresa maintained her household at the East Jefferson Street address, where she had lived her entire life.  See McCullough, 287 Ga. App. at 488

- 13 -

(emphasis omitted).  While Theresa would occasionally sleep at the Highway 308 address, she maintained her household at the East Jefferson Street address.

Occasionally staying at the Highway 308 address does not make that address part of Theresa's household.  At best, Theresa's stay at the Highway 308 address is akin to the situation in Rainey.  217 Ga. App. 618.  In that case, Rainey maintained a separate apartment but "contributed toward rent and bills" at his daughter's home, "where he slept in a bedroom set aside for his use an average of three nights each week" and where he "took showers when he stayed there and left some of his personal effects."  Id. at 620.  Rainey also specifically testified in his deposition that he was living in his Tifton apartment and not his daughter's Albany home.  Id.  Based on this evidence, the Georgia Court of Appeals held "there is no question that he and [his daughter] maintained separate households and did not live together at the time of the accident."  Id.

Similarly, Theresa maintained her household at the East Jefferson Street address, where she had lived all her life, even though she may have occasionally stayed at the Highway 308 address around two weekends a month—which is even less time than the claimant in Rainey.  Like Rainey, Theresa also specifically testified that she lived at the East Jefferson Street address in Americus, not the Highway 308 address in Plains.  ([Doc. 15-4] at 8, 16-17.)

- 14 -

Based on the evidence and law before it, the district court committed clear error when it held that Davis was part of Theresa's household because "the 308 Highway Property was one of T. Davis's residences." ([Doc. 19] at 14.)  The terms "household" and residence" have different meaning in this context, and Davis did not become a member of Theresa's household simply because she was temporarily living at a house Theresa owned and where Theresa would occasionally stay.

In Robertson v. Lumbermen's Mut. Cas. Co., the Georgia Court of Appeals explained: "The ordinary and accepted meaning of the phrase 'one residing in the same household' in an insurance policy, pertains to one who physically maintains permanent or frequently utilized living accommodations in the principal insured's home."  160 Ga. App. 52, 53-54, 286 S.E.2d 385 (1981), overruled on other grounds by Grange Mut. Cas. Co. v. Brinkley, 182 Ga. App. 273, 276, 355 S.E.2d 767 (1987) (citing Henderson v. Transcontinental Mut. Ins. Co., 227 F.2d 106 (5th Cir. 1955))[3]; Southeastern Fidelity Ins. Co. v. McDonald, 125 Ga. App. 394, 188 S.E.2d 162 (1972)).  Thus, the fact that Theresa owned two houses and occasionally slept under the same roof as Davis is not dispositive of the issues before the Court.  Nor was it proper for the district court to rely on Georgia cases holding that a person can have

---

[3] Robertson was overruled to the extent it could "be read as authority for the proposition that one who does not 'physically maintain[ ] permanent or frequently utilized living accommodations in the principal insured's home' may never, regardless of other circumstances, be considered a member of his household[.]"  Brinkley, 182 Ga. App. at 276.

two "residences" for the purpose of insurance coverage. Theresa's "residence" does not determine whether Davis was a member of Theresa's household—which is the issue in this case.

Under Georgia law, a court should consider "the aggregate details of the living arrangements of the parties." McCullough, 287 Ga. App. at 489. Here, evidence regarding the "aggregate details of the living arrangements of the parties" establishes that Theresa maintained her household at a separate address from the house where Davis was temporarily staying at the time of the accident—with no intent at that time to live there permanently. Travelers therefore requests that this Court reverse the district court's order and remand with instruction to enter judgment in Travelers' favor.

### III. The district court erred in weighing the evidence in granting Davis' motion for summary judgment.

Should the Court find that the evidence does not conclusive establish that Travelers is entitled to summary judgment as a matter of law—which Travelers contends it does—the Court should at minimum find that the district court improperly weighed the evidence in granting Davis' motion for summary judgment and reverse the judgment entered in her favor.

"A court 'may not weigh conflicting evidence or make credibility determinations of [its] own. If the record presents disputed issues of fact, the court may not decide them; rather, [it] must deny the motion and proceed to trial.'"

- 16 -

Buending v. Town of Redington Beach, 10 F.4th 1125, 1130 (11th Cir. 2021) (quoting Jones v. UPS Ground Freight, 683 F.3d 1283, 1292 (11th Cir. 2012)). Despite this clear standard, the district court here weighed the evidence in order to hold that the record conclusively stated "that during the relevant time period Defendant intended to reside at the Highway 308 Property with her mother, that the 308 Highway Property was one of T. Davis's residences, and that Defendant and T. Davis were financially interdependent." ([Doc. 19] at 14.)

As demonstrated, Travelers has at minimum produced evidence that Davis, during all relevant times, had the intention of moving to Jacksonville and was staying at the Highway 308 address temporarily because her move was delayed by Covid and by her brother's death, ([Doc. 15-5] at 13, 18, 40-45), that Davis intended her stay at the Highway 308 address to be only a "transitory visitation," ([Doc. 15-4] at 31-33; [Doc. 15-5] at 46), and that Theresa Davis lived at and maintained her household at the East Jefferson Street address. ([Doc. 15-4] at 8, 16-17.) Though this is the only evidence before the district court and requires summary judgment granted in Travelers' favor, to the extent the Court finds that this evidence is not sufficient to support summary judgment in Travelers' favor, the evidence presented by Travelers is more than a "mere . . . scintilla of evidence" and is instead "evidence on which they jury could reasonably find for [Travelers]." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252, 106 S. Ct. 2505 (1986). The district court therefore

- 17 -

at minimum erred in granting Davis' motion for summary judgment by impermissibly weighing the evidence in her favor. Travelers therefore requests that the Court reverse the district court's holding granting Davis' motion.

## **CONCLUSION**

For the above stated reasons, Plaintiff-Appellant Travelers Property Casualty Insurance Company respectfully requests that the Court reverse the district court's denial of its motion for summary judgment and grant of Defendant-Appellee Kamesha Davis' motion for summary judgment. Travelers further requests the Court remand this case with instructions to enter judgment in favor of Travelers.

In the alternative, should the Court find the district court correctly denied Travelers' motion for summary judgment, it should reverse the district court's grant of Davis' motion for summary judgment, finding the district court impermissibly weighed the evidence in Davis' favor.

This 10th day of February, 2025.

*Signature on following page*

- 18 -

MARSH ATKINSON & BRANTLEY, LLC

/s/ *David M. Atkinson*

_____

David M. Atkinson
Georgia Bar No. 026460
Sarah R. Daley
Georgia Bar No. 644153
*Attorneys for Plaintiff-Appellant*

271 17th Street NW
Suite 1600
Atlanta, Georgia 30363
Telephone: (404) 282-5050
Facsimile: (404) 282-3030
david.atkinson@mablawfirm.com
sarah.daley@mablawfirm.com

## CERTIFICATE OF COMPLIANCE

This document complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this document contains 4,426 words, excluding the parts of this document excepted by Fed. R. App. P. 32(a)(7)(B)(iii).  This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the typestyle requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface with 14 point font and Times New Roman typestyle.

This 10th day of February, 2025.

MARSH ATKINSON & BRANTLEY, LLC

/s/ *David M. Atkinson*

_____

David M. Atkinson
Georgia Bar No. 026460
Sarah R. Daley
Georgia Bar No. 644153
*Attorneys for Plaintiff-Appellant*

271 17th Street NW
Suite 1600
Atlanta, Georgia 30363
Telephone: (404) 282-5050
Facsimile: (404) 282-3030
david.atkinson@mablawfirm.com
sarah.daley@mablawfirm.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I have this day served the foregoing ***Brief of Appellant*** upon all parties of record via the Court's electronic filing system, which will electronically serve all counsel of record.

This <u>10th</u> day of February, 2025.

MARSH ATKINSON & BRANTLEY, LLC

/s/ *David M. Atkinson*

_____

David M. Atkinson
Georgia Bar No. 026460
Sarah R. Daley
Georgia Bar No. 644153
*Attorneys for Plaintiff-Appellant*

271 17th Street NW
Suite 1600
Atlanta, Georgia 30363
Telephone: (404) 282-5050
Facsimile: (404) 282-3030
david.atkinson@mablawfirm.com
sarah.daley@mablawfirm.com

-21-